Howard C. MOORE, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–41.

United States Court of Veterans Appeals.

Submitted Jan. 4, 1991.

Decided July 22, 1991.

James B. Roberts and Troy A. Fodor, were on the brief, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Deborah W. Singleton, were on the brief, for appellee.

Before FARLEY, HOLDAWAY and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The appellant veteran appeals a decision of the Board of Veterans' Appeals (Board or BVA) denying him service-connected disability compensation for arthritis in his heels which he contends was caused by a condition, trench foot, which he incurred in service in World War II. We vacate the BVA decision and remand the matter for readjudication and prompt compliance with 38 U.S.C. §§ 5107(b) (formerly § 3007) and 7104(d)(1) (formerly § 4004) regarding, respectively, the obligation of the Department of Veterans Affairs (VA) to assist a VA claimant in developing the facts of his or her case and the requirement that the Board include in its decisions reasons or bases adequate to explain to both the veteran and the Court its findings of fact and conclusions of law.

## I. BACKGROUND

The veteran, Howard C. Moore, served in the United States Army from September 1942 to October 1945. A reconstruction of his Army medical records (necessitated because his medical records were apparently destroyed in the 1973 St. Louis Federal Records Center fire) shows that he was hospitalized in January 1945 for 69 days and diagnosed with a condition "due to reduced temperature: trench foot". R. at 23. Trench Foot is "a painful foot disorder resembling frostbite and resulting from exposure to cold and wet." Webster's Medical Desk Dictionary 729 (1986). According to the reconstruction of the veteran's military medical records, his "physical exams cannot be reconstructed." R. at 16. This obviously includes his termination physical examination.

In applying for compensation for "Frozen Feet" on July 13, 1988, the veteran stated that in the winter of 1944 in northern Italy he "was taken to the U.S. Army 54th General Hospital in Leghorne, Italy where [he] was hospitalized for approximately three months with frozen feet." R. at 5. In an August 3, 1988, followup statement in support of his claim and in response to an inquiry from the VA Regional Office (RO), the veteran advised: "I did not seek treatment for my frozen feet until just recently ... [at the] V.A. Medical Center, Marion, Illinois." R. at 9.

In connection with his application for compensation, he was examined by a VA physician on October 3, 1988, and also had a consultation with a VA radiologist. The physician conducting the physical examination reported that the veteran "claimed at this time he could hardly walk a block, ankle & knees bothered him with swelling & pain. His feet at times swell up & could hardly wear his shoes." R. at 19. The physician concluded:

Extremities: No varicosities. Plantar arch intact. No swelling & deformities of the joints. Range of joints movement

intact & normal. No edema. [Illegible] normal.

. . . .

Final diagnosis:

1) History of frozen feet with DEG, arthritis, lumbar & plantar surface of the calcaneal tuberosities, scoliosis, lumbar spine, concavity to [illegible].

R. at 20.

The examining physician requested a radiology report stating, as the reason, that the veteran had a history of "Frozen feet, with no residual except possible post traumatic arthritis lumbar, knees, ankles & feet." R. at 21. The radiologist reported as to the veteran's feet:

BILATERAL FEET: Examination reveals about 2 mm. sized calcaneal spur at the plantar aspect of the calcaneal tuberosities. There is no evidence of any recent fracture dislocation or articular erosions.

R. at 22.

On January 25, 1989, the VARO Rating Board denied service connection for degenerative joint disease and residuals of frozen feet, respectively. R. at 25. On January 30, the rating board continued the denial for the residuals of frozen feet. R. at 26. The veteran, in his appeal to the Board of Veterans' Appeals (BVA), filed on April 17, 1989, stated:

I was discharged from the Separation Center, Ft. Sheridan, Illinois. The doctor wanted to keep me in the Army for further treatment on my foot condition, right and left. I had been away from home for so long, I would not sign up to stay in the service for this further treatment. I can only believe that when I would not stay in, the doctor did not show this condition in my records at time of my separation.

I have always been bothered with this condition. But I have not tried to service-connect the condition until recently. I am doing so now, because the condition has become so much worse.

R. at 40.

In a July 28, 1989, decision, the BVA denied service connection for disabilities of the feet, finding in part:

2. In service the veteran was hospitalized for 69 days for trenchfoot.

3. The skin on the veteran's feet is normal, no edema is present, and no residuals of the 1945 cold injury is demonstrated.

4. Degenerative arthritis of the plantar surface of the calcaneal tuberosities was not shown until October 1988, more than 40 years after separation from service, and is not related to the history of frozen feet.

*Howard C. Moore*, BVA 90–07842, at 3–4 (July 28, 1989).

As its "CONCLUSION OF LAW", the BVA stated:

A foot disability was not the result of a disease or injury incurred or aggravated in service, and arthritis of the feet may not be presumed to have been incurred therein. (38 U.S.C. 301, 310, 312, 313; 38 C.F.R. 3.307, 3.309).

*Id.* at 4.

The appellant contends on appeal that he should not be punished for not seeking compensation earlier because he did not want to be a "a burden sooner" and therefore managed to take care of himself. Br. of Appellant at 3, 5. He supports his contention that his degenerative arthritis of the heels is not too remote in time to be service-connected by referring to "medical authority which supports the proposition that ... degenerative arthritis[ ] is related to his in service injury, trench foot." *Id.* at 6; *see also id.* at 7, 8. He further contends that, since the evidence is equivocal on the issue of causation, the reasonable doubt should be given to him as a combat veteran so that the issue of service connection is resolved in his favor, citing 38 U.S.C. § 354(b) (1988) (requiring that "every reasonable doubt" be resolved in favor of a combat veteran in determining service connection).

The Secretary responds that the appellant has failed to corroborate his assertions of a connection between his current arthritis and his in-service cold injury by the submission of "objective clinical findings". Br. of Appellee at 11. The Secretary fur-

ther points out that the condition of the veteran's feet, as shown on his 1988 examination, is not consistent with the symptoms which would be present, according to the appellant's medical evidence submitted on appeal to this court, had his arthritis been related to his trench foot. *Ibid.* The Secretary further contends that the veteran has not borne the burden of proof in establishing entitlement to service connection and that the BVA found, in effect, "that the evidence of record actually preponderated against the veteran" and that therefore the doctrine of reasonable doubt "was not for application". *Id.* at 12.

## II. ANALYSIS

### A.

Beginning with *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990), this Court has consistently held that in order to enable a claimant to understand a decision and the reasons behind it, as well as to assist in judicial review, the BVA is required by 38 U.S.C. § 7104(d)(1) to include in its decisions "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions". *Gilbert,* at 56; *see, e.g., Sammarco v. Derwinski,* 1 Vet.App. 111, 112–14 (1991); *Green v. Derwinski,* 1 Vet.App. 121, 123–24 (1991); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169 (1991); *Jones v. Derwinski,* 1 Vet. App. 210, 217–18 (1991); *see also Browder v. Derwinski,* 1 Vet.App. 204, 207–08 (1991). In making its statement of findings, "the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive." *Gilbert,* 1 Vet.App. at 57; *see also Sammarco,* 1 Vet. App. at 113; *Hatlestad,* 1 Vet.App. at 169. In providing its "reasons or bases", the Board must include in its decisions "the precise basis for that decision ... [and] the Board's response to the various arguments advanced by the claimant." *Gilbert,* 1 Vet. App. at 56; *see also Hatlestad,* 1 Vet.App. at 169. This must include "an analysis of the credibility or probative value of the evidence submitted by and on behalf of the veteran in support of [his or her] claim [and] a statement of the reasons or bases for the implicit rejection of this evidence by the Board." *Gilbert,* 1 Vet.App. at 58; *see also Hatlestad,* 1 Vet.App. at 169.

■ Measured against these requirements, the Board's decision here falls far short. This is readily apparent from a recitation of the brief paragraph comprising the entire "DISCUSSION AND EVALUATION" portion of the Board's decision:

> The veteran contends that he is entitled to service connection for residuals of frozen feet. Service connection is warranted for a disability which is the result of a disease or injury incurred or aggravated in service. In this case, the evidence shows that the veteran was hospitalized from January 1945 to March 1945 for trenchfoot. It is asserted that as a result of this trenchfoot, the veteran has continued to have problems with his feet ever since. However, the evidence of record does not support this conclusion. The first objective medical evidence showing treatment for a foot disability was in October 1988, more than 40 years after separation from service. In addition, according to the Veterans Administration examination, the skin on the veteran's feet was normal, and there was no indication that the veteran's foot disability was related to service. Therefore, the grant of service connection for residuals of frozen feet is not warranted.

*Moore,* BVA 90–07842, at 3.

Nowhere does the Board explain its basis for rejecting the veteran's assertion that he had foot problems at discharge or that he had "always been bothered" with foot problems. R. at 40. Nowhere does the Board make reference to or evaluate the significance of the examining VA physician's reference to a "possible" frozen feet residual of "post traumatic arthritis lumbar, knees, ankles & feet." R. at 21.

### B.

In this case, the 1988 examination conducted by a VA physician revealed a diagnosis of "deg[enerative] arthritis" of the heels. R. at 20. The Board's decision

deals with that issue in finding of fact No. 4, *supra*, at page 4, in which it finds that the arthritis, "more than 40 years after separation from service, . . . is not related to the history of frozen feet." *Moore*, BVA 90–07842, at 4. The RO had found essentially the same thing in its January 28 and 30, 1989, decisions. R. at 25, 26.

In *Murphy v. Derwinski*, 1 Vet.App. 78 (1990), we held that under 38 U.S.C. § 5107(a) (formerly § 3007) the "initial burden is on the shoulders of the veteran or the claimant: '[A] person who submits a claim . . . shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded.' [§ 5107(a)]. . . . A well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a)]." *Murphy*, at 81.

■ In this case, we conclude that the veteran successfully met his initial burden of proof in demonstrating his service-connected trench feet and in asserting that he had problems with his feet at the time of his separation examination and continuously thereafter over the subsequent 40 years. Although such an assertion with respect to the separation examination might readily be confirmed or rebutted by the report of that examination, in a case such as this, where the records entrusted to the Government as custodian were destroyed, a combat veteran's statement to this effect is sufficient evidence of that fact under § 354(b) of title 38, U.S.Code. Under that provision, in "the case of any veteran who engaged in combat with the enemy in active service . . . during a period of war, . . . the [Secretary] shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence . . . of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence . . . in such service, and, to that

end, shall resolve every reasonable doubt in favor of the veteran." 38 U.S.C. § 354(b) (1988). *See also* 38 C.F.R. §§ 3.304(d) and 3.102 (last sentence) (1990) (both to the same effect as the statute).

■ The claimant having met his burden under § 5107(a) of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded, the burden then shifts to the Secretary to "assist such a claimant in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a). "Within the non-adversarial process of VA claims adjudication, the word 'pertinent' takes on an even stronger meaning; the Secretary's duty applies to *all* relevant facts, not just those for or against the claim." *Murphy*, at 82.

The duty to assist here was breached by both the RO and the Board in failing to recognize the inadequacy of the report of the VA compensation and pension examination. That report failed to include any opinion by the examining physician as to a possible relationship between the veteran's service-connected trench feet and the subsequent development of degenerative arthritis of his heels. Under VA adjudication regulations and guidelines, "if the [examination] report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (1990); *see also* VA Adjudication Procedure Manual, M21–1, § 55.03; *Green*, 1 Vet. App. at 123–24. Similarly, as this Court held in *Littke v. Derwinski*, 1 Vet.App. 90 (1990), "[w]here as here, the record before the BVA was clearly inadequate, remand [to the RO] is required" pursuant to 38 C.F.R. § 19.182(a) (1990). *Littke*, at 93; *see Green*, 1 Vet.App. at 123–24; *cf. Akles v. Derwinski*, 1 Vet.App. 118, 120 (1991).

In the instant case, the "fulfillment of the statutory duty to assist . . . includes the conduct of a thorough and contemporaneous medical examination," *Green*, 1 Vet. App. at 123–24, and an examination report which includes "a medical opinion as to whether [the veteran's] current disabilities are in any way related to . . . those experienced in service." *Witherspoon v. Der-*

*winski,* 2 Vet.App. 4, 4 (per curiam order 1991).

Further, the Secretary's duty to assist under the facts of this case was particularly great in light of the unavailability of the veteran's exit examination and full Army medical records and the applicability of section 354(b) with respect to a combat veteran. Against this background, it was especially incumbent on VA to insure that its current examination and the report thereof was as complete and thorough as possible in dealing with the veteran's contentions. It was not for the veteran to introduce "objective medical evidence showing treatment for a foot disability ... [in the intervening] 40 years after separation from service", *Moore,* BVA 90–07842, at 3, as the Board seemed to require, and as the Secretary argued he must, Br. of Appellee at 11.

On appeal, counsel for the appellant has offered quotations from a number of medical treatises to substantiate a causal connection between trench foot and arthritis developed many years thereafter. "[S]uch [evidence] ... must be submitted to the Board, either initially, or as part of a request for reconsideration, or on a remand from this Court. Of course, it could also form the basis for an initial claim filed with the Regional Office or, in appropriate circumstances, serve as new and material evidence in support of a request that a claim be reopened." *Green,* 1 Vet.App. at 124; *Sawyer v. Derwinski,* 1 Vet.App. 130, 138 (1991) (concurring opinion). We are a court of appeals. "Review in the Court shall be on the record of proceedings before the [Secretary] and the Board." 38 U.S.C. § 7252(b) (formerly § 4052). Hence, we are not permitted to "address in the first instance [such medical evidence] because it was not in the record of the proceedings before the Board." *Green,* 1 Vet.App. at 124; *see also Rogozinski v. Derwinski,* 1 Vet.App. 19, 20 (1990).

## III. CONCLUSION

Accordingly, because of the deficiencies in the Board's decision in terms of the requirements of 38 U.S.C. §§ 7104(d)(1), 5107(a), and 354(b), the Board's July 28, 1989, decision is vacated and the matter is remanded, pursuant to 38 U.S.C. § 7252(a), for readjudication and disposition in accordance with this opinion.

VACATED AND REMANDED.