Robert Louis PARKER, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–284.

United States Court of Veterans Appeals.

Submitted Feb. 21, 1991.

Decided Oct. 18, 1991.

As Amended Oct. 22, 1991.

Joal R. Hall, Salisbury, N.C., was on the brief for appellant.

Raoul L. Carroll, Washington, D.C., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Jacqueline M. Sims, were on the pleadings for appellee.

Before HOLDAWAY, IVERS and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

This case involves an appeal by veteran Robert Louis Parker from a Board of Veterans' Appeals (BVA or Board) December 13, 1989, decision denying his claim for service connection for a vision deficiency due to a macular hole in his left eye. In that decision, the Board stated: "In the absence of any indication of trauma during the veteran's period of service and [given] the reported history of left eye injury prior to service, we conclude that the presumption of soundness has been rebutted." *Robert L. Parker*, BVA 89–06603, at 5 (Dec. 13, 1989). Because the Court has concluded that the evidence before the BVA did not, in fact, rebut the presumption of soundness, in 38 U.S.C. § 1111 (formerly § 311) and 38 C.F.R. § 3.304(b) (1991), the BVA decision is vacated, the Court retains jurisdiction, and the matter is remanded for proceedings consistent with this opinion.

## I. BACKGROUND

The veteran served on active duty in the United States Army from May 14, 1964, to May 13, 1966. His entrance examination

report noted distant vision of "20/20" in his right eye, "20/40" in his left eye, and myopia [nearsightedness]. R. at 3. An August 27, 1964, examination of his left eye, by an Army physician, noted a macular cyst and hole that seemed to be attributed to a "trauma incurred at age 19" (as related by the veteran) and to "trauma—old". R. at 5. However, the veteran's April 5, 1966, separation examination report contained no reference to changes in his distance vision and did not mention the macular cyst and hole. R. at 8–9.

The veteran filed an initial claim for service connection for his left-eye injury in August 1976. The Regional Office (RO) of the Veterans' Administration (now the Department of Veterans Affairs) (VA) denied the claim two months later. No appeal was taken. The veteran reopened his claim in September 1987 on the basis of a July 20, 1987, letter from Dr. A.D. Sakowski, Jr., a private physician, stating that although there was no evidence of macular disease at the time of the veteran's entrance into the military, "a small macular cyst could have been missed by a non-ophthalmic examiner." R. at 55. Dr. Sakowski further opined that a macular hole or cyst can produce "the type of 20/40 to 20/50 vision that [the veteran] had enjoyed ... and then can pursue [sic] a more devastating loss of vision at a later time". R. at 56. The RO again denied the claim on September 30, 1987. R. at 58–59.

In December 1988, the RO denied another reopened claim after the veteran had submitted an October 25, 1988, letter from Curtis R. Robinson, D.D.S., who had served with the appellant and recalled "a conversation with him concerning [an in-service] injury ... in August or September 1965" and that Parker had "refused to see a doctor for fear of being released from the service." R. at 62. An appeal to the BVA followed and was denied on December 13, 1989.

In a September 11, 1989, hearing before the Board, the veteran, under oath, denied that his eye injury resulted from a football accident when he was 19, and explained that it was the result of an accidental kick

from an Army colleague during morning exercises. The veteran's testimony in response to questions from his representative was as follows:

Q. And, at the time that the doctor was doing that examination, you related some information to him regarding the fact that you had played football.

A. Yes, sir.

Q. Can you tell us the nature of that statement as you related it to the doctor. We know it is a matter of record how he interpreted that statement. Would you relate to the Board, what you, in fact, said to the doctor?

A. He asked me had I ever been hurt at any time. I said, sure, I'd been hurt numerous times because I played football. And, he asked me what was the last year that I played football. I said I was 19. And, that was the extent of my question, that was the extent of our conversation.

Q. But, you are absolutely certain that you did not relate to him that you had sustained an injury to the left eye while playing football at the age of 19.

A. No, sir. I told him I played football. My last year was at 19 and I had been, I told him I had had numerous injuries at certain points, playing football. Like I told him I had sprained ankles, or, you know, bruised ribs or something like that. But, I never told. This, I didn't tell him. I just made a statement in general that I had sustained some type of injuries but not injuries to the extent to where it was going to be disabling to me anyway.

R. at 84–85.

On October 30, 1989, the veteran submitted to the Board a letter from an ophthalmologist, Dr. Clifton L. Peay, concluding that the veteran's left-eye vision "had deteriorated from his discharge visual acuity of 20:50 to currently an uncorrected at present of 20:200.... Funduscopic examination ... confirmed the presence of a large macular scar with a full fitness macula hole ... in the macula area of the left eye." R. at 96–97.

The appellant maintains on appeal that he is entitled to the benefit of a presumption of soundness upon entry into service and that he has presented ample evidence of an in-service injury. Furthermore, even if his injury did exist prior to induction, he contends, alternatively, that his medical records indicate that his eyesight deteriorated during service. Br. at 3. As a result, he argues, he is entitled to disability compensation, because his military service aggravated a pre-existing condition.

The Secretary argues that the BVA's findings clearly demonstrate that the veteran's left-eye injury existed prior to service and was not aggravated by it. Motion of Appellee at 7. In addition, the Secretary contends that the BVA correctly concluded that the presumption of soundness was rebutted by clear and unmistakable evidence as required by 38 C.F.R. § 3.304(b). Motion of Appellee at 5.

## II. ANALYSIS

■ The applicable VA regulation reads, in pertinent part:

*Presumption of soundness.* The veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, **except as to** defects, infirmities, or **disorders noted at entrance** into service, **or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto. Only such conditions as are recorded in examination reports are to be considered as noted.**

(1) History of preservice existence of conditions recorded at the time of examination does not constitute a notation of such conditions but will be considered together with all other material evidence in determinations as to inception. Determinations should not be based on medical judgment alone as distinguished from accepted medical principles, or on history alone without regard to clinical factors pertinent to the basic character, origin and development of such injury or disease. They should be based on thorough analysis of the evidentiary showing and

careful correlation of all material facts, with due regard to accepted medical principles pertaining to the history, manifestations, clinical course, and character of the particular injury or disease or residuals thereof.

38 C.F.R. § 3.304(b) (1991) (bold face emphasis added).

This regulation prescribes that "[o]nly such conditions as are recorded in examination reports are to be considered as noted." 38 C.F.R. § 3.304(b) (1991). The BVA decision concluded that "the veteran had the left eye disability prior to service" and that, absent any indication of trauma during the veteran's service and given the reported history of left-eye injury prior to service, "the presumption of soundness has been rebutted." *Parker*, BVA 89–06603, at 5. The Board then concluded that the pre-existing injury it found "was not aggravated by service." *Id.* at 6.

It is undisputed that no eye defect or disability was "noted" in the report of the veteran's entrance examination, despite an eye examination. R. at 2–3. Thus, under the applicable VA regulation, the Board would have to find that a pre-existing "injury or disease" had been demonstrated by "clear and unmistakable (obvious or manifest) evidence". 38 C.F.R. § 3.304(b) (1991). The evidence relied upon by the Board as meeting this standard of proof is the report of an Army physician, recorded in August 1964, that the veteran had told him about having "had problems with his left eye since an injury while playing football at the age of 19." *Parker*, BVA 89–06603 at 5. The Board further found significance in the fact that the veteran had made "no direct [medical] complaint concerning the left eye in August 1964" when he was being treated for an unrelated right-eye problem. *Id.* at 5. This "evidence", or rather a lack thereof, is rebutted by the private physician's July 20, 1989, letter, on which the Board itself relied in discussing the possibility of aggravation of the left-eye condition during service. In that report Dr. Sakowski, who had first examined the veteran in 1981, stated "that it is not unusual for this type of [eye]

problem [the veteran had experienced] to produce 20/40 to 20/50 visual acuity for a period of time and then deteriorate." *Ibid;* R. at 56.

Hence, the sum total of the "clear and unmistakable evidence" **relied upon** by the Board as rebutting the presumption of sound condition is the examining Army physician's notes about what the veteran allegedly said to him in 1964 when seeking treatment for a right-eye problem. Another piece of evidence in the record, Dr. Sakowski's letter to the appellant, would seem to corroborate what the veteran is reported to have told the examining Army physician in August 1964. Dr. Sakowski stated:

> A review of the history that you gave me at that time [when the veteran was seen by Dr. Sakowski on November 20, 1981] revealed that you had been playing football some 15 years prior to our evaluation in 1981. But, you did not mention at that time nor was it recorded that you had been kicked in the eye by a boot while in the service. Whether or not you mentioned this and it was not recorded or you in fact did not mention this aspect of your history is not known to me at this time, but all I can tell you is that it was not recorded on my chart.

R. at 56. The BVA, however, while mentioning this reference in its outline of the evidence, did not discuss it or rely upon it in its "DISCUSSION AND EVALUATION".

If, on remand, the BVA seeks to rely on these two physicians' statements to rebut the presumption of sound condition, it must do so after an analysis of and in the context of all the evidence of record. The Board failed to do that in the decision on appeal. First, the BVA did not deal, in its "DISCUSSION AND EVALUATION", with the appellant's sworn testimony that the BVA had misinterpreted his response to a question by an Army physician as to whether he had "ever been hurt at any time" (R. at 84) and that the conclusion drawn about an eye injury at age 19 reflected a misunderstanding between what he had said and what he had meant in prior medical examinations. Neither did the BVA explain the weight it

gave to the October 25, 1988, statement of Dr. Robinson about having discussed with the appellant an eye injury sustained by him in service. R. at 62. Indeed, the Board totally ignored Dr. Robinson's statement.

Both of these deficiencies are violations of 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)) which the Court has construed to require the BVA to "include in its decisions 'the precise basis for [its] decision ... [and] the Board's response to the various arguments advanced by the claimant'" and "an analysis of the credibility or probative value of the evidence submitted by and on behalf of the [claimant] in support of [his or her] claim", and "account for the evidence it finds persuasive or unpersuasive." *Moore v. Derwinski,* 1 Vet.App. 401, 404 (1991) (quoting *Gilbert v. Derwinski,* 1 Vet.App. 49, 56, 58, 56–57 (1990)).

 Finally, even if the veteran ultimately prevails in his position that there is not clear and unmistakable evidence to rebut the presumption of sound condition, in order to be entitled to disability compensation he still must prevail on the factual question of whether his current vision deficiency is reasonably attributable to an inservice injury and, if so, at what, if any, degree of disability. In order to trigger VA's duty to assist the "claimant in developing the facts pertinent to the claim" under 38 U.S.C. § 5107(a) (formerly § 3007), the claimant must submit a well-grounded claim. *See Murphy v. Derwinski,* 1 Vet. App. 78, 80–81 (1990); *Moore,* at 405. We held in those cases that a well-grounded "claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a)]." *Murphy,* at 81, *Moore,* at 405. Under this standard, we conclude that the veteran submitted a well-grounded claim, based on the entrance examination, Dr. Robinson's statement, Dr. Sakowski's letter, Dr. Peay's letter, and the veteran's sworn testimony, that there could reasonably be a connection between his current left-eye vision deficiency and an inservice accident.

As we held in *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991) and *Moore*, at 405, in certain situations, the "fulfillment of the statutory duty to assist ... includes the conduct of a thorough and contemporaneous medical examination." The report of that examination should include "a medical opinion as to whether [the veteran's] current disabilities are in any way related to ... those experienced in service." *Moore*, at 405; *Witherspoon v. Derwinski*, 2 Vet. App. 4 (per curiam order 1991) (if review suggests relationship between current disabilities and those experienced in service, BVA should consider remand to agency of original jurisdiction). *See also Blair v. Derwinski*, 1 Vet.App. 389 (per curiam order, 1991) (remand to include physical examination of appellant, medical opinion, and readjudication); *Green*, at 123–124. Here, no VA examination has apparently been conducted to determine whether it is reasonable to attribute the appellant's current vision deficiency to the in-service injury he testified had occurred. On remand, such an examination should be conducted.

## III. CONCLUSION

Accordingly, the December 13, 1989, BVA decision is vacated, the Court retains jurisdiction, and the matter is remanded to the BVA for readjudication in accordance with this opinion. The Secretary's motion for summary affirmance is denied. The Secretary shall file with the Clerk and serve upon the appellant a copy of the Board's decision on remand. Within 14 days after such filing, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

VACATED AND REMANDED.