Robert E. CASE, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–1029.

United States Court of Veterans Appeals.

Submitted Aug. 16, 1991.

Decided July 15, 1992.

Robert E. Case, pro se.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel and Adrienne Koerber, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Associate Judges.

IVERS, Associate Judge:

Appellant, Robert E. Case, appeals from a Board of Veterans' Appeals (BVA or Board) decision which denied service connection for an acquired psychiatric disorder and for chronic prostatitis. On February 22, 1991, appellant filed an informal brief, arguing for reversal on the ground that the BVA decision was clearly erroneous. On May 20, 1991, the Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay of the proceedings. Appellant filed a reply to the Secretary's motion on June 3, 1991. For the reasons set forth below, the BVA decision as to appellant's prostatitis claim is vacated and remanded, but affirmed as to his acquired psychiatric disorder.

## I. BACKGROUND

Appellant served in the United States Army from March 30, 1945, to September 21, 1945, and from January 3, 1946, to January 25, 1947. R. at 27–28. Appellant was hospitalized from July 14, 1946, to July 17, 1946, and again from August 6, 1946, to August 8, 1946, for a diphtheria shot reaction. R. at 15, 17–20. An entry from appellant's hospital records, dated August 6, 1946, states "[c]omplaining that working around gasoline causes sickness at [sic] stomach." R. at 16. Appellant was prescribed Belladonna. *Id.* Belladonna is a medicinal extract (atropine) from the belladonna plant. WEBSTER'S MEDICAL DESK DICTIONARY 69 (1986). Atropine is normally used "in the form of its sulfate to inhibit the actions of acetylcholine in the parasympathetic nervous system (as by relieving spasms of smooth muscle or dilating the pupil of the eye)". *Id.* at 56. This appears to be the only entry in appellant's service medical records that can be construed as treatment for "nervousness." At this time, appellant expressed his wishes to be transferred from his unit. R. at 16. Appellant also states that he received a typhoid shot in early October 1946, which also caused him to suffer a reaction and spend several days in the hospital. R. at 100. A record for this treatment is not found in the record on appeal.

According to appellant, after he was released from the hospital, he rejoined his company. However, unbeknownst to him, he was transferred to another company and did not realize this until he received his pay. Since he was not present in his new company, he was marked "absent without leave" and brought up on disciplinary charges. R. at 95–99. Appellant attributes his nervous condition to his reaction to the shots and being a victim of a hoax. R. at 84.

On November 4, 1946, appellant underwent a hearing in front of a Board of Officers. R. at 23–24. The Board recommended that appellant be discharged for "inaptness" and "lack of adaptability for the military service." R. at 24. He was given an honorable discharge but was not allowed to reenlist in the future. *Id.* Prior to his discharge, on December 3, 1946, appellant underwent a physical examination at the Separation Center at Fort Bragg, North Carolina. He was later given a psychiatric diagnosis of "lack of adaptability." R. at 21–22.

Appellant was discharged on January 25, 1947. R. at 27–28. Prior to discharge, appellant went home on "terminal leave" from the service in December 1946. R. at 90. It was during appellant's fifty-day "terminal leave" that he claimed he first received treatment for prostatitis at the Veterans' Administration (now Department of Veterans Affairs) (VA) Medical Center, in Asheville, North Carolina. *Id.* He was treated by Dr. Rich Conner. R. at 91. Appellant also claimed that he received treatment at Moores General Hospital in Swannanoa, North Carolina, for both his prostate and nervous condition. R. at 51–52, 55.

On September 25, 1947, and again on November 17, 1947, and March 10, 1948, appellant received treatment at a VA hospital and was diagnosed with "prostatitis, chronic". R. at 30–32, 36–37. Prostatitis is defined as "inflammation of the prostate gland." WEBSTER'S MEDICAL DESK DICTIONARY 580 (1986). On July 10, 1948, appellant was diagnosed as having neurasthenia. R. at 39. Neurasthenia is defined as "an emotional and psychic disorder that is characterized esp[ecially] by easy fatigability and often by lack of motivation, feelings of inadequacy, and psychosomatic symptoms." *Id.* at 471. On September 29, 1948, appellant was again treated for chronic prostatitis and a mitral murmur was found in his heart. R. at 40–41.

Appellant filed a claim with the VA on April 9, 1951, for service connection for nervousness. R. at 42. Appellant's claim was denied by the rating board on May 3, 1951. *Id.* It appears from the record that appellant was again denied service connection for a psychiatric disorder in October 1953. *Robert E. Case,* BVA 90–17094, at 2 (May 30, 1990). Appellant's claim was reevaluated on January 13, 1953, pursuant to

changed legislation, but he was again denied service connection. R. at 43.

Appellant did not attempt to reopen his claim again until September 1982. At that time, the rating board found that the new evidence submitted by appellant was "insufficient to establish a new factual basis to reconsider service connection for [a] nervous condition, not shown in service." R. at 60. He was given a non-service-connected rating of seventy percent for a "personality disorder, inadequate personality with anxiety symptoms, with intractable depression and history of psychoneurosis" and a zero-percent rating for prostatitis. R. at 60–61. On October 31, 1983, the BVA denied service connection for an acquired psychiatric disorder and for prostatitis. R. at 62–67.

On November 9, 1983, appellant filed a VA Form 1–9 alleging several errors in the Board's decision. R. at 68. It does not appear from the record that appellant received a response from the VA until after an inquiry was made by Congressman James Clarke. On November 21, 1984, BVA Chairman Kenneth E. Eaton wrote to appellant responding to his allegations. R. at 72–73.

On June 28, 1989, appellant attempted to reopen his claim with a letter written by Dr. Bruce G. Armstrong, dated June 23, 1989. In the letter, Dr. Armstrong stated that he had reviewed some of appellant's medical records and expressed the following opinion:

> I think that [the September 1947 diagnosis of chronic prostatitis] was an incorrect diagnosis in that he had had no prior symptoms of prostatism or prostatitis. Certainly, his most likely diagnosis in this setting is a non-specific urethritis. Had he had chills, fever and back and perineal pain a diagnosis of an acute bacterial prostatitis could have been entertained. Certainly to make a diagnosis of chronic bacterial prostatitis on the initial evaluation was inappropriate.
> Most cases of chronic bacterial prostatitis are made after an acute urethritis or prostatitis has occurred. Symptoms persist for many months and examinations of prostatic secretions and post massage urines will show persistent inflammatory cells and sometimes post massage urine cultures of prostatic secretions will show the causative organism.

R. at 74. Thus, in order to have a diagnosis of chronic prostatitis, Dr. Armstrong was of the opinion that there must have been an initial diagnosis of either acute urethritis or acute prostatitis, thereby suggesting that appellant's problem with prostatitis first occurred while he was in service.

On July 18, 1989, appellant was informed that Dr. Armstrong's statement did not warrant any change in the rating board's previous determination concerning prostatitis. R. at 77. Later, in a July 31, 1989, deferred or confirmed rating decision, service connection was again denied for appellant's nervous condition, although no additional evidence was submitted for this disorder. R. at 78. Appellant filed a Notice of Disagreement as to both decisions on August 9, 1989. R. at 79. The Statement of the Case, sent to appellant on August 15, 1989, stated that the reason for the decisions was that appellant had not submitted any "new and material evidence showing he acquired a psychiatric disorder or chronic prostatitis in military service or that he has such disabilities which were permanently aggravated by military service." R. at 83. A formal hearing was conducted on December 6, 1989. R. at 89–94. On December 7, 1989, the hearing officer determined that the testimony and evidence of record did "not provide a new factual basis to allow for service connection of a nervous condition or prostatitis." R. at 109. The May 30, 1990, BVA decision upheld the denial. Appellant made a timely appeal to this Court. This Court has jurisdiction to hear this appeal under 38 U.S.C. § 7252 (formerly § 4052).

## II. ANALYSIS

### A. Chronic Prostatitis

 "New and material" evidence is established when that evidence is "relevant and probative of the issue at hand" and when there is a "reasonable possibility that

the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). The Court holds, as a matter of law, that Dr. Bruce G. Armstrong's letter, given the most favorable reading, is new and material evidence. Dr. Armstrong's opinion, made after a review of appellant's records, when viewed "in the context of all the evidence, both new and old," could change the outcome. According to Dr. Armstrong, a diagnosis of "chronic" prostatitis would not be made if there was not an earlier diagnosis or symptoms of prostatitis preceding it. Dr. Armstrong believed that if appellant did not suffer from prostatitis symptoms prior to September 1947, then a more likely diagnosis was a non-specific urethritis. R. at 74. Because this statement is "new and material," the BVA should have reopened appellant's claim pursuant to *Manio v. Derwinski*, 1 Vet.App. 140 (1991). Once it is established that new and material evidence exists, the claim must be reopened and all of the evidence must be evaluated.

### B. Duty to Assist

■ Upon presentation of a well-grounded claim, the VA is required to assist an appellant in developing the facts pertinent to his claim. *See* 38 U.S.C. § 5107(a) (formerly § 3007(a)); 38 C.F.R. § 3.103(a) (1991); *Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991); *Moore v. Derwinski*, 1 Vet.App. 401, 405 (1991); *Murphy v. Derwinski*, 1 Vet.App. 78, 80–81 (1990). Here, appellant had a well-grounded claim on prostatitis, but the VA failed to assist him when it did not attempt to obtain medical records and reports that he had specified. *See Littke v. Derwinski.* 1 Vet.App. 90, 92–93 (1991).

Appellant first requested that the VA seek additional medical records in a letter to the VA Regional Office, dated August 25, 1982. R. at 51–52. In that letter, appellant requested that the VA obtain his medical records from Moores General Hospital in Swannanoa, North Carolina. He stated that his prostatitis was first treated by Dr. Conner, and that, by 1947, he was

receiving treatment from a Dr. Burr. R. at 51. From the record on appeal, it does not appear that the VA ever attempted to obtain these records.

Again, during the hearing, appellant submitted several documents related to his prostatitis claim. R. at 95–107. The Board made no comment regarding the documents he brought with him to his hearing, even though appellant had again given the name of the VA doctor that first treated him for prostatitis in December 1946. Finally, a direct request for missing medical reports was made by appellant's service representative in his informal hearing presentation, dated May 8, 1990. R. at 111. The Court finds that the VA must attempt to locate these records identified by appellant.

### C. Reasons and Bases

■ Under 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)) and *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1991), the BVA is required to provide in its decisions not only a written statement of its findings and conclusions but also the reasons or bases for them. In reaching its decision the Board did not comment on a number of inconsistencies found in the record. The Court notes that appellant's separation examination was conducted on December 3, 1946; however, he was not formally discharged until January 25, 1947. It was during the intervening time period, when appellant was on terminal leave, but still in the service, that he contends that he was first treated for prostatitis. Any treatment received after the separation examination would not, logically have been depicted on the examination. Therefore, the separation examination, by itself, could not be grounds for a denial of service connection. The Board did not address this issue.

In addition to the above, appellant has challenged the validity of the separation examination on other grounds. Although the examination showed that appellant had not been treated for any illnesses or hospitalizations, and had 20/20 vision, from his service medical records it is clear that appellant received treatment at least twice,

and possibly three times, for reactions to shots, and that his entrance examination showed that he had 20/40 vision. R. at 9, 22, 102. These points should also be addressed upon remand.

### D. Acquired Psychiatric Disorder

With respect to appellant's claim for service connection for an acquired psychiatric disorder, it is the holding of the Court that appellant has not demonstrated that the BVA committed either legal or factual error which would warrant reversal or remand and that the BVA decision satisfies the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1) and the benefit of the doubt doctrine of 38 U.S.C. § 5107(b) (formerly § 3007(b)). *See Gilbert,* 1 Vet.App. at 53–57.

### III. CONCLUSION

The Secretary's motion for summary affirmance is GRANTED with respect to the nervous condition but is DENIED with respect to appellant's prostatitis. As to the prostatitis claim, the BVA decision is VACATED and REMANDED to the BVA for readjudication in accordance with this opinion.