Citation Nr: 1214065 
Decision Date: 04/17/12 Archive Date: 04/27/12

DOCKET NO. 09-15 975 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUE

Entitlement to service connection for allergic conjunctivitis. 


REPRESENTATION

Appellant represented by: New Jersey Department of Military and Veterans' Affairs


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

J Fussell


INTRODUCTION

The Veteran served on active duty from May 2002 to September 2007.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from an April 2008 rating decision of the Newark, New Jersey Department of Veterans' Affairs (VA) Regional Office (RO). A review of the Virtual VA paperless claims processing system does not reveal any additional documents pertinent to the present appeal. 

The Veteran testified at a hearing before the RO in July 2009. A transcript of that hearing has been associated with the claim file.

The issue of service connection for a disability manifested by allergic conjunctivitis was remanded by the Board in July 2010. That issue has now been returned for appellate consideration. 


FINDINGS OF FACT

1. Neither allergic conjunctivitis nor dry eyes were present during service. 

2. Allergic conjunctivitis as well as dry eyes were first demonstrated after service discharge and are unrelated to the Veteran's military service and any incident therein. 

3. Allergic conjunctivitis and dry eyes are not etiologically related or the result of the service-connected post-traumatic stress disorder nor aggravated thereby. 



CONCLUSION OF LAW

Allergic conjunctivitis was not incurred in or aggravated during active service nor is it proximately due to or aggravated by a service-connected disorder. 38 U.S.C.A. §§ 1110, 1154(b), 5103(a) (West 2002); 38 C.F.R. §§ 3.303, 3.304, 3.310, 4.14 (2010). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veterans Claims Assistance Act (VCAA)

The VCAA, codified, in part, at 38 U.S.C.A. § 5103, was signed into law on November 9, 2000. Implementing regulations were created, codified at 38 C.F.R. § 3.159 (2010). 

VCAA notice consistent with 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate a claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). 

The United States Court of Appeals for Veterans Claims (Court) held in Pelegrini v. Principi, 18 Vet. App. 112 (2004) that to the extent possible the VCAA notice, as required by 38 U.S.C.A. § 5103(a) (West 2002), should be provided before an initial unfavorable decision on a claim for VA benefits. Pelegrini, 18 Vet. App. at 119-20; see also Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Prior to the initial adjudication of the Veteran's claims for service connection in the April 2008 rating decision, he was provided notice of the VCAA in January 2008. The VCAA letter indicated the types of information and evidence necessary to substantiate the claim, and the division of responsibility between the Veteran and VA for obtaining that evidence, including the information needed to obtain lay evidence and both private and VA medical treatment records. With that letter he was given information as to the downstream disability rating and effective date elements of his claims. Moreover, he was furnished a Statement of the Case (SOC) in April 2009 with subsequent re-adjudications in September 2009 and November 2011 Supplemental SOCs (SSOCs). Dingess v. Nicholson, 19 Vet. App. 473 (2006); see also Mayfield and Pelegrini, both supra. Moreover, as the claim is denied, no disability rating and effective date will be assigned as a matter of law. Therefore, there can be no possibility of any prejudice to the Veteran with respect to any defect in the VCAA notice required under Dingess, at 19 Vet. App. 473. See VAOPGCPREC 8-2003 (Dec. 22, 2003); Sanders v. Nicholson, 487 F.3d 881 (Fed. Cir. 2007) and Bernard v. Brown, 4 Vet. App. 384, 394 (1993). 

All relevant evidence necessary for an equitable resolution of the issue on appeal has been identified and obtained, to the extent possible. The Veteran's service treatment records (STRS), service personnel records, VA outpatient treatment reports, and statements and testimony from the Veteran are on file. 

In July 2010 the Board remanded the issue of service connection for allergic conjunctivitis to afford the Veteran a VA nexus examination. See generally 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006); Locklear v. Nicholson, 20 Vet. App. 410 (2006); Waters v. Shinseki, 601 F.3d 1274, 1276 (2010); see also 38 U.S.C. § 5103A (d)(1). The examination was conducted in September 2010. 

The VA examination in September 2010 yielded an informed medical opinion which directly responded to the question posed in the Board's July 2010 remand. That VA examination report is accepted as adequate because it provides evidentiary information that speaks directly to the Veteran's subjective complaints, the objective findings found on evaluation, and an informed medical opinion. See 38 C.F.R. § 3.326 (2010). An examination is adequate when there is a reasoned medical explanation connecting a clear conclusion with supporting data, so that evaluation of the claimed disability will be a fully informed one and does not require the Board to exercise independent medical judgment but allows the Board consider and weigh it against contrary opinions (although in this case there are no contrary opinions) and evidence. See generally Ardison v. Brown, 6 Vet. App. 405, 407 (1994) (citing Green v. Derwinski, 1 Vet. App. 122, 124 (1991); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007) (citing Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991); see also Nieves-Rodriquez v. Peake, 22 Vet. App. 295, 301 (2008). 

Also, the adequacy of the examination and medical opinion obtained have not been challenged. As to this, under Comer v. Peake, 552 F.3d 1362, 1368 (Fed.Cir. 2009), "the Board is entitled to assume the competence of a VA examiner unless the competence is challenged. Rizzo [v. Shinseki,] 580 F.3d at 1290-91. The argument that a VA medical examiner's opinion is inadequate is sufficiently close to the argument raised in Rizzo that it should be treated the same." Sickels v. Shinseki, 643 F.3d 1362, 1366 (Fed. Cir. 2011). 

Accordingly, there has been substantial compliance with the Board remand. See generally Stegall v. West, 11 Vet. App. 268 (1998). D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (citing Dyment v. West, 13 Vet. App. 141, 146-47 (1999) substantial, rather than absolute or strict, remand compliance is the appropriate standard for determining remand compliance). 

The Veteran has not indicated that he has any further evidence to submit to VA, or which VA needs to obtain. There is no indication that there exists any additional evidence that has a bearing on this case that has not been obtained. The Veteran has been accorded ample opportunity to present evidence and argument in support of his appeal. All pertinent due process requirements have been met. See 38 C.F.R. § 3.103. 

Background

The Veteran's DD form 214 notes that he was awarded the Combat Action Ribbon during his active service and his military occupational specialties (MOS), including rifleman and mortar man. 

During a July 2009 RO hearing the Veteran testified that he currently had a twitching in the corner of his right eye that he was told that it could be stress related to post traumatic stress. The Veteran also reported that he had this condition in service. Page 13 of the transcript of that hearing. 

Service treatment records reflect that while the Veteran did report wearing glasses upon examination for entry into active service in January 2002, and that examination yielded no findings of eye abnormalities but his uncorrected distant visual acuity was 20/70 in each eye correctable to 20/25, and his uncorrected near vision was 20/20 in each eye. 

In a May 2002 eye examination, the Veteran was diagnosed with compound myopic astigmatism in the left eye and compound myopia in the right eye. He had no eye complaints at that time. In September 2003 his corrected visual acuity was 20/20 in each eye and it was again noted that he wore glasses. In December 2003 his corrected visual acuity was 20/20 in each eye and new frames for his glasses were ordered. 

In a May 2007 eye examination, the Veteran reported that he wore glasses. However, he did not report any disabilities with the eyes and reported not having had any physical ocular trauma but related having a worsening of distant visual acuity but not near visual acuity. He was diagnosed with a refractive error, myopia and astigmatism, regular. A June 2007 service clinical record reflects that he had a history of multiple exposures to improvised explosive devices as an infantryman. The June 2007 separation examination was negative for any findings of eye abnormalities and the Veteran did not report any problems with his eyes at that time. 

In a January 2008 VA outpatient treatment report the Veteran reported having a foreign body sensation with respect to the eyes since July and occasional crusty eyes in the morning. He felt it was related to a previous eye injury when a rifle cartridge hit his right eye, although he was not really sure. The Veteran was diagnosed with allergic conjunctivitis and refractive error. 

On VA examination of the Veteran's eyes in January 2008 he reported that in approximately 2007 a spent casing hit him below the right eye but that he had not sought treatment for it. He stated that since that time he had a foreign body sensation in the right eye and twitching in the right lower lid. On examination his best corrected distant visual acuity was 20/20 in each eye and his unaided near visual acuity was 20/20 in each eye. The Veteran was diagnosed with refractive error and allergic conjunctivitis in both eyes. 

On VA examination in September 2010 of the Veteran's eyes he reported a history of an eyelid twitch of the right lower lid for many years and a foreign body sensation in the right eye. He denied a history of any surgery, injury or pain in the eyes. He wore daily disposable contact lenses but did not use ocular medications. The eye examination revealed that his best corrected distant and near visual acuity was 20/20 in each eye. Extraocular muscle movements were full and visual fields to confrontation were full to finger-counting in the eyes. There were no pupil abnormalities noted. The slit-lamp examination revealed grade 1 papilla of the conjunctivae of both eyes. There were no abnormalities of the corneas, irises, lids or anterior chambers. No abnormalities were noted on dilation examination of the fundi. The examiner diagnosed a refractive error, and also diagnosed dry eye that presented acutely on examination and did not appear to be a chronic problem nor was it due to military service. 

VA treatment records from September 2009 through November 2011 show no complaints, findings, diagnosis or treatment of allergic conjunctivitis. 

Principles of Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110. Service connection requires evidence of a (1) current disability; (2) medical, or in certain circumstances, lay evidence of inservice incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the first two elements. Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Pond v West, 12 Vet. App. 341, 346 (1999); Dalton v. Nicholson, 21 Vet. App. 23, 36 (2007). 

38 C.F.R. § 3.303(b) provides two alternative methods of establishing service connection: (1) chronicity and (2) continuity of symptomatology. Certain disabilities and diseases will be presumed to have been incurred in service if manifested to a compensable degree within one (1) year after service. 38 U.S.C.A. § 1112; 38 C.F.R. §§ 3.307, 3.309. Neither allergic conjunctivitis nor dry eyes are listed a disease which is chronic for the purpose of application of the one (1) year presumptive period. 

To otherwise establish that there was a chronic inservice disability, there is required (1) a combination of manifestations sufficient to identify the disease entity, and (2) sufficient observation to establish chronicity at the time as distinguished from merely isolated findings or a diagnosis including the word "chronic". When established as chronic during service there is no requirement of postservice continuity of symptoms. 38 C.F.R. § 3.303(b). Rather, subsequent manifestations of that chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent cause(s). 38 C.F.R. § 3.303(b). 

On the other hand, continuity of symptomatology is required only where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of postservice continuity is required. 38 C.F.R. § 3.303(b). 

Continuity of symptomatology can be established if it can be demonstrated (1) that a condition was "noted" during service (however, the notation of a condition during service "need not be reflected in any written document", see Savage, 10 Vet. App. 488, 496-97 (1997); (2) evidence of postservice continuity of the same symptomatology (as to which lay testimony may be competent, see Buchanan v. Nicholson, 451 F.3d 1331, 1335-36 (Fed.Cir. 2006)); and (3) medical or competent lay evidence of a nexus between the present disability and the postservice symptomatology. Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). See 38 C.F.R. § 3.303(b). As to the third element, competent evidence, such as a VA examination, can establish an etiological nexus. McLendon v. Nicholson, 20 Vet. App. 79, 81-86 (2006). 

Service connection will be granted on a secondary basis for disability that is proximately due to or the result of, or permanently aggravated by, an already service-connected condition. 38 C.F.R. § 3.310(a) and (b). This requires (1) evidence of a current disability; (2) a service-connected disability; and (3) evidence establishing a nexus between the service-connected disability and the claimed disability. Wallin v. West, 11 Vet. App. 509, 512 (1998). 

38 U.S.C.A. § 1154(a) requires due consideration be given to circumstances of a veteran's service and to all pertinent medical and lay evidence, even in cases not involving combat injury. 38 U.S.C.A. § 1154(b) provides that in combat-related claims lay or other evidence of service incurrence or aggravation is sufficient proof of a combat event. See Davidson v. Shinseki, 581 F.3d 1313, 1315 (Fed.Cir. 2009). 

If the preponderance of the evidence is against the claim, it must be denied; but, if the preponderance supports the claim or the evidence is in equal balance, the claim is allowed. 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102; Ortiz v. Principi, 274 F.3d 1361, 1365-66 (Fed. Cir. 2001). If the Board determines that the preponderance of the evidence is against the claim, it has necessarily found that the evidence is not in approximate balance, and the benefit of the doubt rule is not applicable. Ortiz, 274 F.3d at 1365. 

Analysis

Initially the Board notes that myopia, astigmatism and even myopic astigmatism have been diagnosed. However, generally, these are refractive errors of the eyes. Congenital or developmental defects, e.g., refractive error of the eye, as such are not diseases or injuries within the meaning of applicable legislation. 38 C.F.R. § 3.303(c). 

"[N]early all astigmatism is congenital (where heredity is the only known factor), it may also occur as a residual of trauma and scarring of the cornea, or even from the weight of the upper eyelid resting upon the eyeball." Browder v. Brown, 5 Vet. App. 268, 272 (1993). Myopia is "nearsightedness." Parker v. Derwinski, 1 Vet. App. 522, 523 (1991) and Norris v. West, 11 Vet. App. 219, 220 (1998). "Myopic astigmatism is 'an error of refraction caused by unequal curvature of the refractive surfaces of the eye,' which complicates myopia, the 'error of refraction in which rays of light entering the eye parallel to the optic axis are brought to a focus in front of the retina, as a result of the eyeball being too long from front to back.' Dorland's at 170, 1243." Pickett v. Shinseki, No. 09-2901, slip op. footnote 3 (U.S. Vet. App. December 1, 2010) (nonprecedential memorandum decision); slip copy, 2010 WL 4922888 (Table). 

While an astigmatism may in some instance be acquired, such as by virtue of trauma (which is alleged in this case) there no evidence that the Veteran's myopic astigmatism is due to inservice trauma, even any reported trauma to the eye sustain in combat. Rather, the Veteran has reported that his putative eye injury occurred in 2007 but the evidence shows that myopia, astigmatism, and myopic astigmatism were noted as early as 2005, five years prior to any eye injury in 2007 and this is consistent with the Veteran's having reported wearing glasses upon his entry into active service. Moreover, despite an inservice complaint of decreased distant visual acuity, there is no evidence of a diminution in the Veteran's visual acuity during his active military service, to include due to worsening of any congenital or refractive error due to trauma. To the contrary, the evidence shows that his near visual acuity has always been normal at 20/20 in each eye and the currently his corrected visual acuity, shown on the 2010 VA examination, of 20/20 in each eye is better that it was when he entered active service, at which time his corrected distant visual acuity was correctable to only 20/25 in each eye. 

In the July 2010 Board remand it was stated that the Board found that the evidence of record supported a finding that the Veteran was engaged in combat during his active duty service because his DD 214 showed he was awarded the Combat Action Ribbon and because military occupational specialties (MOS), including rifleman and mortar man which were indicative of combat service. Thus, the provisions of 38 U.S.C.A. § 1154(b) and 38 C.F.R. § 3.304(d) were for application in this case. In sum, the Board accepted the Veteran's statements that a spent casing/rifle cartridge hit him below the right eye during his active service. 

While the provisions of 38 U.S.C.A. § 11154(b); 38 C.F.R. § 3.304(d) apply in this case and, as a result, the Board concedes that the Veteran sustained an eye injury during service, the analysis does not end here. Rather, these provisions only allow for the Veteran's statements and testimony to be sufficient proof of a combat event. But, this relates to what happened during service and not the questions of either the existence of current disability or its nexus to service. Davidson v. Shinseki, 581 F.3d 1313, 1315 (Fed.Cir. 2009) (finding that 38 U.S.C.A. § 1154(b) does not require controlling weight be given to testimony as to the cause of a combat veteran's death). 

In this case, as stated above, there is no evidence of any diminution in the Veteran's visual acuity at any time since he entered military service. Likewise, while the Board notes that he denied having ocular trauma during service in May 2007 and that he did not specifically report having had any eye injury when he reported having been exposed to improvised explosive devices in June 2007, neither of the two postservice VA examinations disclosed any clinical findings which either VA examiner reported as being a residual of trauma. 

The Board also finds it significant to note that while the Veteran has more recently stated, beginning at the time of the January 2008 VA eye examination, that he had continued to have both twitching of his eye and a sensation of a foreign body in an eye since a reported inservice eye injury; whereas, he initially reported having a sensation of a foreign body in an eye at the time of VA outpatient treatment earlier that month only since July 2008. This is a point in time many months after his discharge from active service. 

With respect to the Veteran's testimony that he had chronic twitching of a corner of the right eye which might be due to service-connected PTSD, there is no objective clinical evidence which corroborates the chronic twitching, to which he testified. Rather, neither VA treatment records nor VA examinations have objectively confirmed any twitching. Moreover, there is nothing in the record that would even remotely suggest that such twitching, even assuming it existed, causes any actual ocular impairment. To the extent that he may (or may not) have chronic twitching due to PTSD this would be a neuropsychiatric manifestation that would be appropriately rated as part and parcel of the disability evaluation assigned for his service-connected PTSD. See 38 C.F.R. § 4.14 (both the use of manifestations not resulting from service-connected disease or injury in establishing the service-connected evaluation, and the evaluation of the same manifestation under different diagnoses are to be avoided). 

Significantly, the Veteran only testified that he had been told that such twitching might be related to his PTSD and he did not testify that he was told that it was actually due to PTSD or that it caused any actual ocular impairment or disability. Thus, the Veteran's lay testimony does recite an actual diagnosis for the purpose of establishing the current existence of a disease based on a report of a contemporary medical diagnosis or a lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See generally Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

Thus, the Board concludes that the Veteran's current myopic astigmatism, any allergic conjunctivitis, and dry eyes are not of service origin and allergic conjunctivitis and dry eyes, the latter being only acute in nature, are not shown until after discharge from his military service in 2007. 

This being the case, the claim for service connection for allergic conjunctivitis must be denied because the preponderance of the evidence is unfavorable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. See also Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 






ORDER

Service connection for allergic conjunctivitis is denied. 




____________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs