Arthur G. BETTIES, Jr., Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–319.

United States Court of Veterans Appeals.

May 27, 1993.

Before STEINBERG, Associate Judge

### MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, Vietnam veteran Arthur G. Betties, Jr., appeals from a November 15, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying service con-nection for a low-back disorder, a cervical spine disability, and a psychiatric disorder including post-traumatic stress disorder (PTSD). The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance of the low-back and cervical-spine claims and for summary remand of the psy-chiatric-disorder claim. Summary disposi-tion is appropriate in this case because it is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Der-winski*, 1 Vet.App. 23, 25–26 (1990). The Court will grant the Secretary's motion for summary affirmance as to the cervical-spine claim, deny the motion for summary affir-mance as to the low-back claim, and grant the motion for remand as to the psychiatric-disability claim.

### I. Background

The veteran had active service from Janu-ary 1967 to January 1970. R. at 1. His service medical records (SMRs) reflect sever-al complaints of low-back pain between Au-gust 1968 and September 1969. R. at 18, 35, 37–40, 42–45. An April 3, 1969, SMR stated that the veteran had been "hit by [a] small tree" three weeks earlier, and diagnosed him with mild low-back strain. R. at 37. An orthopedic examination in April 1969 re-vealed no back problems. R. at 38–39. An April 1969 X ray was negative for any evi-dence of organic back disease. R. at 39. A September 1969 SMR stated: "bone sclerosis on new X ray reveals a pseudoarthrosis of left transverse process". R. at 45. "Bone sclerosis", or eburnation, is "the conversion of a bone into an ivory-like mass". DOR-LAND'S ILLUSTRATED MEDICAL DICTIONARY, 525, 1496 (27th ed. 1988) [hereinafter DOR-LAND'S]. "Pseudoarthrosis" is "a pathologic entity characterized by deossification [loss of mineral elements] of a weight-bearing long bone, followed by bending and pathologic fracture". DORLAND'S at 1376–77, 447. A "long bone" is "a bone that has a longitudinal axis of considerable length". DORLAND'S at 224. The "transverse process", or crista sa-cralis lateralis, is "either of two series of

tubercles lateral to the dorsal sacral foramina". DORLAND'S at 398, 1357.

In October 1969, the veteran was examined in service for complaints of neck pain of 3–4 days duration, but no pathology was then found. R. at 44. An August 1969 SMR reflects that a psychiatric consultation was recommended but that the veteran did not want to see a psychiatrist. R. at 45–46. On the veteran's January 1970 separation examination, the examiner found no defects and noted that the veteran had, during his service, suffered a sprained right foot and ankle and a back injury resulting in back pain, but that there had been "no recurrence of either of [the] above". R. at 55–57.

In 1970, the veteran filed a claim for service connection for a condition unrelated to the above claims. R. at 60. In 1981, he filed a claim for a non-service-connected pension based on permanent and total disability. R. at 94. On a Veterans' Administration (now Department of Veterans Affairs) (VA) general physical examination in 1981, no complaints or findings of any low-back or cervical-spine problems were noted. R. at 82–83. On a VA psychiatric examination at that time, the examiner noted that the veteran was experiencing some "anxiety situations", including unemployment and a pending divorce, but did not give a specific diagnosis. R. at 84. On August 13, 1981, a VA regional office (RO) denied the veteran's pension claim and determined that the veteran's only disabling condition was "transient ischemic attacks with residual headaches and right sided weakness", rated as 10% disabling. R. at 94.

In March 1990, the veteran filed a claim for service connection for a back injury. R. at 95–98. The RO denied that claim in April 1990, stating that residuals of the in-service low-back strain had not been found. R. at 100–01. In July 1990, the veteran filed a claim for service connection for a nervous condition "to include [PTSD]". R. at 112. The report of a 1987 private hospitalization for chest pains noted that the veteran had been diagnosed with "anxiety disorder". R. at 107. In an August 1990 letter, the veteran supplied the RO with the names of physicians and a psychologist whom he had seen for his back problem and psychiatric condition, respectively. R. at 113. The RO subsequently obtained private medical records pertaining to the veteran's treatment for his back (R. at 122–54), but the record on appeal does not reflect any efforts to obtain a record of the veteran's reported treatment by a private psychologist.

A May 1990 "WORKER'S COMPENSATION NARRATIVE REPORT" stated that the veteran in March 1990 had fallen "about two floors" down a ladder, landed on his back, left heel, and buttocks, and subsequently complained of pain in the neck, shoulder, and low back. R. at 146. He was diagnosed with, inter alia, lumbar strain and cervical strain syndrome. R. at 148, 149. A June 1990 workers' compensation report noted that the veteran was seeing a VA psychiatrist and was on antidepressive medication. R. at 149. The veteran's lumbar and cervical spine areas were examined by magnetic resonance imaging (MRI) at a private hospital in May 1990. R. at 153–54. The examiner noted that there was no evidence of disk herniation in the lumbar spine but that there was "an abundance of extradural fat within the distal spinal canal extending from the L3–4 level to the upper portion of the sacral canal", which "may represent spinal lipomatosis and may be responsible for low back pain", but that "[m]ore often, it is a variation of normal." R. at 153. "Lipomatosis" is "a condition characterized by abnormal localized, or tumor-like, accumulations of fat in the tissues." DORLAND'S at 945. The MRI of the cervical spine was normal. R. at 154. The RO also obtained records of the veteran's assignments during his service; they apparently do not reflect that the veteran participated in combat. R. at 116–19. In September 1990, the RO denied the veteran's claims. R. at 155–56. On appeal to the BVA, he requested that he be given a VA examination to evaluate his disabilities. R. at 174.

In the November 1991 BVA decision on appeal, the Board concluded that the veteran's claims were well grounded under 38 U.S.C.A. § 5107(a) (West 1991), but that VA had adequately carried out its duty to assist the veteran under section 5107(a), and that an examination of the veteran was not war-

336

ranted because there was not a "reasonable probability of a valid claim" under 38 C.F.R. § 3.326(a) (1992). *Arthur G. Betties, Jr.,* BVA 91–38549, at 3–4. In denying the veteran's low-back claim, the Board noted that, although the veteran was seen on many occasions in service for complaints of low-back pain, the physical examinations and the April 1969 X ray revealed no organic disease and the January 1970 separation physical noted no recurrence of back pain at that time. *Id.* at 4.

With respect to the September 1969 in-service X-ray diagnosis of a pseudoarthrosis of the transverse process, the Board, citing DORLAND'S at 1275 (25th ed. 1974), noted that a pseudoarthrosis was a deossification of a weight-bearing long bone, and that the September 1969 diagnosis "apparently was a misnomer inasmuch as the transverse process is not a long bone." *Id.* at 4–5. The Board further stated that "a pathology of the transverse process has never been identified subsequent to service", and that "[t]he Board also finds it significant that when the veteran was initially examined by the VA in 1981, he did not report any problems relating to the low back and none was found on examination." *Id.* at 5. The Board thus concluded: "Given the absence of back complaints for many years after service, as well as the clear post[-]service low back injury, it is evident that the veteran's inservice back complaints were acute and transitory and did not result in any chronic disability." *Ibid.*

With respect to the cervical-spine claim, the Board noted that the veteran had on one occasion complained of neck pain during service, but that no pathology was then found and that there were no complaints or findings of a cervical-spine disability thereafter until after the veteran's March 1990 accident. *Id.* at 5–6. The Board thus concluded that the current cervical-spine disability was unrelated to any condition existing during the veteran's service. *Id.* at 6.

In denying the veteran's psychiatric claim, the Board stated that there was no evidence of a psychiatric problem during service, that on his separation examination the veteran had specifically denied having any psychiatric complaints, and that post-service references to an anxiety disorder did not relate that condition to the veteran's service but rather related it to other factors. *Id.* at 6–7. The Board thus concluded that there was no evidence of a psychiatric condition during service or for many years thereafter. With respect to the veteran's PTSD claim, the Board concluded that there was no evidence that the veteran had participated in combat or had experienced any other stressors sufficient to support a finding of PTSD, and that there was no evidence in the record that the veteran currently suffers from PTSD. *Id.* at 7.

## II. Analysis

### A. Low–Back Disability

 When a claimant submits a well-grounded claim, VA is required to "assist such a claimant in developing the facts pertinent to the claim." 38 U.S.C.A. § 5107(a) (West 1991); *see Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990) (well-grounded claim is a "plausible claim, one which is meritorious on its own or capable of substantiation"). Here, the veteran's low-back claim is plausible in view of his numerous complaints of low-back pain in service and the September 1969 in-service X ray showing a pseudoarthrosis of the transverse process. Because the record does not contain any current VA or other examination for the purpose of determining whether the veteran currently suffers from a pseudoarthrosis or other condition which could be related to the condition noted in service, VA's statutory duty to assist here "includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability is a fully informed one." *Green (Victor) v. Derwinski,* 1 Vet. App. 121, 124 (1991); *see Wilson (Lawrence) v. Derwinski,* 2 Vet.App. 16, 21 (1991); *Parker v. Derwinski,* 1 Vet.App. 522, 526 (1991); *Moore (Howard) v. Derwinski,* 1 Vet.App. 401, 405 (1991); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991). Although the Board may be correct in concluding that the in-service diagnosis of a pseudoarthrosis of the transverse process was a "misnomer" in that the examiner used apparently inconsistent terminology, that conclusion does not render the in-

service diagnosis a nullity. Rather, even if there was an error in terminology, it is apparent from the SMR that the examiner in September 1969 diagnosed a disability of the lumbar spine.

■ The BVA denied the veteran's request for an examination on the basis that there was not a "reasonable probability" of a valid claim, so as to require an examination to be conducted pursuant to 38 C.F.R. § 3.326(a) (1992), which provides that a VA examination "will be authorized" where "the reasonable probability of a valid claim is indicated". However, the Court has on numerous occasions held that the *statutory* duty to assist in section 5107(a) will require VA to perform an examination when the record is insufficient to adjudicate fairly a well-grounded claim for service connection. *See Ascherl v. Brown*, 4 Vet.App. 371, 374 (1993); *Fanning v. Brown*, 4 Vet.App. 225, 230 (1993); *Cuevas v. Principi*, 3 Vet.App. 542, 548 (1992); *Parker, supra; EF, supra; Green, supra*. Therefore, because there was no current examination addressing the issue of whether the veteran suffers from a current disability of the lumbar spine which may be related to the condition manifested in service, remand is required for an examination pursuant to the statutory duty to assist. *See* 38 C.F.R. § 3.303(d) (1992) (direct service connection).

■ In adjudicating the low-back claim, the Board stated that "service connection for a low back disability may be granted upon a showing that the veteran's inservice low back complaints represented the onset of a chronic disability and that such disability has continued to the present." However, under 38 C.F.R. § 3.303(b) (1992), if evidence establishes that the disease manifested in service was a chronic disease, there is no requirement that there be continuity of symptomatology from the time of service until the present. Rather, section 3.303(b) expressly provides:

> With chronic diseases shown as such in service (or within the presumpt[ion] period under § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic condition at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes.... For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "Chronic." When the disease entity is established ..., there is no requirement of a showing of continuity.

Therefore, if the Board on remand, giving appropriate weight to the SMRs and in-service diagnoses, determines that the veteran had manifested a chronic back disability during service and that the evidence developed on remand shows current manifestations of that disability, then the disability is to be service connected, notwithstanding the lack of evidence of symptomatology for many years after service. Furthermore, under 38 C.F.R. § 3.303(d) (1992), the claimant can establish service connection for a condition first diagnosed after separation from service if "all the evidence, including facts pertinent to service, establishes that the disease was incurred in service."

### B. Cervical–Spine Disability

■ The Court reviews BVA factfinding under a "clearly erroneous" standard; if there is a "plausible" basis in the record for the Board's findings, the Court cannot overturn them. 38 U.S.C.A. § 7261(a)(4) (West 1991); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). In the present case, although the veteran complained of neck pain on one occasion during service, there is no evidence of a diagnosed neck disability during service that could constitute a chronic disability manifested during service and no evidence of complaints of or treatment for a cervical-spine disability for many years after service until the veteran was treated for injuries sustained in a 1990 accident. Therefore, there is a plausible basis for the Board's conclusion that the current cervical-spine disability is not related to his service, and that conclusion may not be reversed as clearly erroneous.

### C. Psychiatric Disability including PTSD

■ The veteran's claim for service connection for a psychiatric disability is well

**338**

grounded on the basis of SMRs reflecting a recommendation that the veteran be given a psychiatric consultation (R. at 45–46) and evidence of a 1987 diagnosis of "anxiety disorder" (R. at 107). *See Murphy, supra.* Pursuant to the duty to assist, VA was required to seek to obtain reports of pertinent treatment for that condition of which it was on notice. *See Murincsak v. Derwinski,* 2 Vet.App. 363, 369–72 (1992); *Masors v. Derwinski,* 2 Vet.App. 181, 186–87 (1992). In the present case, the veteran notified VA that he had received treatment for psychiatric problems from a private psychologist, whose name and address he provided. R. at 112–13. Additionally, a June 1990 workers' compensation report states that the veteran had been seeing a VA psychiatrist. R. at 149.

In his motion for remand, the Secretary states that the RO had sent to the private psychologist a written request for records of treatment of the veteran but that the RO's letter had been returned as having been directed to the wrong address. The Secretary concedes that VA erred in failing to make any other efforts to obtain those records or to inform the veteran of its inability to obtain the records and that remand is required for VA to carry out its duty to assist by seeking to obtain such records. The Court agrees that remand for such action is indicated. Additionally, on remand, VA should also seek to ascertain whether the veteran was given psychiatric treatment by a VA psychiatrist and, if so, to obtain copies of any records of such treatment.

### III. Conclusion

Upon consideration of the record and the pleadings of the parties, the Court grants the Secretary's motion for remand and grants in part and denies in part his motion for summary affirmance. The November 15, 1991, BVA decision is affirmed as to the cervical-spine claim. As to the low-back and psychiatric-disability claims, the BVA decision is vacated and remanded for prompt further development and readjudication, consistent with this decision, on the basis of all evidence and material of record and all applicable law and regulation. *See Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1992). "On remand, the veteran will be free to submit additional evidence and argument" on the remanded issues. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of that new decision is mailed to the appellant.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.