Citation Nr: 21049976
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 17-48 914
DATE: August 13, 2021

ORDER

Entitlement to service connection for infectious hepatitis (claimed as hepatitis C with fatigue) is denied.

Entitlement to service connection for peripheral neuropathy of the left lower extremity, to include as secondary to infectious hepatitis, is denied.

Entitlement to a total disability rating based on individual unemployability (TDIU) prior to December 5, 2012, on an extraschedular basis is denied.

FINDINGS OF FACT

1. The preponderance of the evidence is against finding that the Veteran's hepatitis was incurred in or otherwise related to service.

2. The preponderance of the evidence is against finding that the Veteran's peripheral neuropathy of the left lower extremity was incurred in or otherwise related to service.

3. The Veteran does not have a service-connected disability prior to December 5, 2012.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for infectious hepatitis have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

2. The criteria for entitlement to service connection for peripheral neuropathy of the left lower extremity, to include as secondary to infectious hepatitis, have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

3. The criteria for entitlement to a TDIU prior to December 5, 2012, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from October 1974 to October 1977 and November 1978 to August 1986.

This appeal to the Board of Veterans' Appeals (Board) arose from a June 2014 rating decision issued by the Department of Veterans Affairs (VA). See December 2014 Notice of Disagreement (NOD); September 2017 Statement of the Case (SOC); September 2017 Substantive Appeal (VA Form 9).

The Veteran testified before the undersigned Veterans Law Judge in a January 2020 hearing. See January 2020 Hearing Transcript.

In March 2020, the Board granted entitlement to a TDIU, effective December 5, 2012. March 2020 Board Decision. The Board remanded the other claims above, including entitlement to a TDIU prior to December 5, 2012, for further development. Id.

In April 2021, the Board remanded the claims again for further development. April 2021 Board Decision.

As an initial matter, the Board finds that there has been substantial compliance with his prior March 2020 and April 2021 remand directives.

The Board notes that the March 2020 Board decision found the May 2010 rating decision to not be final and, thus, there was no prior final decision for the any of above claims that would require new and material evidence for reopening prior to considering the underlying claim of entitlement to service connection. See March 2020 Board Decision. The Board recognizes that there is a September 2002 rating decision which denied the Veteran's claim of entitlement service connection for hepatitis and is considered a final decision. However, the Veteran's lay statements about having needle and scalpel "sticks" during service, which he believes caused his current hepatitis, is evidence that was not part of the record at the time of the September 2002 rating decision and material to his claim. The Board, thus, finds that there is also reason to grant the Veteran's request to reopen and this decision will focus on the underlying claim of entitlement to service connection. 

In addition, the Board notes that, while the Veteran's claims file contains at least tome service treatment records, the agency of original jurisdiction (AOJ) indicated in a March 2010 VA Memorandum that there are missing service treatment records. When, as here, these service records are lost or missing, through no fault of the Veteran, the VA has a heightened duty to consider the applicability of the benefit of the doubt rule. Cromer v. Nicholson, 19 Vet. App. 215, 217-18 (2005) (citing Russo v. Brown, 9 Vet. App. 46, 51 (1996)). See also Cuevas v. Principi, 3 Vet. App. 542, 548 (1992); O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). However, while indeed unfortunate, missing service records does not obviate the need for the Veteran to have medical nexus evidence supporting his claims. See Milostan v. Brown, 4 Vet. App. 250, 252 (1993) (citing Moore v. Derwinski, 1 Vet. App. 401, 406 (1991) and O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991)). In this case, the Board finds that the preponderance of the evidence is against the Veteran's claims.

Service Connection

Service connection may be established for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303. Service connection is established when there is competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. 38 U.S.C. §§ 1110, 1131; Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d).

Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection may be established on a secondary basis for: (1) a disability which is proximately due to or the result of a service-connected disease or injury; or, (2) any increase in severity of a nonservice-connected disease or injury which is proximately due to or the result of a service-connected disease or injury, and not due to the natural progression of the nonservice-connected disease or injury. 38 C.F.R. § 3.310 (a)-(b); see also 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a); Allen v, Brown, 7 Vet. App. 439 (1996) (en banc); Ward v. Wilkie, 31 Vet. App. 233 (2019).

Generally, to prevail on theory of secondary service connection, there must be evidence of (1) a current disability, (2) a service-connected disability, and (3) a nexus, or link, between the current disability and the service-connected disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

1. Entitlement to service connection for infectious hepatitis (claimed as hepatitis C with fatigue).

The Veteran asserts entitlement to service connection for hepatitis as due to exposure to hepatitis during his duties as a medic and nurse during service. The Veteran believes that the use of an air gun for his vaccinations and his contact with needles, scalpels, and body fluids during service resulted in his current hepatitis condition. See, e.g., October 2013 VA Form 21-4142; November 2014 NOD; January 2020 Hearing Transcript. The Veteran also testified that he recalls being diagnosed with hepatitis in 1988.

The evidence shows that hepatitis C is a current disability. See November 2020 VA Examination for Hepatitis, Cirrhosis, and other Liver Conditions. The Board also finds that the Veteran's report of having contact with needles, scalpels, and body fluids during service is consistent with place, type, and circumstances of his service. See August 1986 DD Form 214. The question remaining for the Board is whether the evidence supports a medical link between the Veteran's current hepatitis C and his service.

The available service treatment records do not support that the Veteran's current hepatitis C was incurred in service. The service treatment records show no diagnosis or treatment for hepatitis. The Veteran had sought treatment for symptoms such as cramps and nausea, but it was assessed as viral gastroenteritis. See, e.g., January 1986 Service Treatment Record. During separation from his second period of service, the Veteran reported being in good health with a history of a finger operation, but no other issues. July 1986 Report of Medical History. His separation examination also noted no defects and a normal clinical evaluation. July 1986 Report of Medical Examination.

Medical treatment evidence since separation shows that the Veteran was first diagnosed with hepatitis c in 1998, more than 10 years after separation. November 2001 VA treatment evidence. The Veteran did not report to his treatment providers of an earlier diagnosis. See id. 

The Veteran was also afforded March 2020 and May 2021 VA examinations for his hepatitis. The March 2020 VA examiner opined that the Veteran's hepatitis is less likely than not due to service. March 2020 VA Examination Medical Opinion. The March 2020 VA examiner explained that, based on statistics from the Center for Disease Control, there is a 1.8% chance of healthcare personnel contracting hepatitis C from a needle stick. See id. The May 2021 VA examiner also opined that it is less likely than not that the Veteran's current hepatitis C was incurred in or caused by service. March 2021 VA Examination Medical Opinion. The May 2021 VA examiner explained that there is no evidence of hepatitis C contraction in service. Id. Rather, the VA examiner opined that his hepatitis C was first diagnosed in 1998 and presented with symptoms, which suggest a relatively recent infection. The examiner also explained that infection through an inoculation gun during service is theoretically possible, but there is no documented cluster in military members to support this as a cause of the Veteran's hepatitis C. See id. The examiner also noted that occupational exposure while working as a nurse is a known risk, but the evidence shows no significant exposure event and protocols for high risk exposure would have been in place. Id. The May 2021 VA examiner opined that the more likely cause of his current hepatitis C is his history of drug abuse. Id. 

The March 2020 and May 2021 VA examiners are medical professionals qualified to opined on the cause of the Veteran's hepatitis, who provided detailed rationale to support their opinions. The Board finds that the VA examiners findings and opinions, taken together, are highly probative against finding that the Veteran's hepatitis C was incurred in or otherwise due to service.

The Board considered the Veteran's lay statements that he believes his hepatitis C was contracted in service either through an inoculation gun for vaccinations or contact exposure to needles, scalpels, and body fluids. While the Veteran has a medical background that may qualify him to opine on the possible cause of his current hepatitis, the Veteran own statements he does not know exactually when he contacted hepatitis. Moreover, the Board finds his statements to be outweighed by the lack of hepatitis treatment during service and the VA examiners' detailed opinions with citations to the low statistical probability of infection and evidence indicating 1998 as the more likely date he contracted hepatitis. 

The Board, thus, finds that the preponderance of the evidence is against finding that the Veteran's hepatitis C was incurred in or otherwise related to service. Accordingly, entitlement to service connection for infectious hepatitis is not warranted.

2. Entitlement to service connection for peripheral neuropathy of the left lower extremity, to include as secondary to infectious hepatitis.

The Veteran asserts that his hepatitis resulted in his left lower extremity peripheral neuropathy. November 2014 NOD. The Veteran testified that his treatment providers told him that his peripheral neuropathy is due to his hepatitis or kidney cancer. January 2020 Hearing Transcript.

The evidence supports that the Veteran has peripheral neuropathy in his left foot. December 2014 Correspondence from M K, DPM. However, as discussed above, the evidence is against finding his current hepatitis as incurred in or otherwise related to service. The criteria for entitlement to left lower extremity peripheral neuropathy as secondary to his infectious hepatitis is, thus, not met.

The Board also considered whether the evidence supports that the Veteran's peripheral neuropathy of the left lower extremity was incurred in or otherwise due to service.

The Veteran has not provided any statement about a specific event or injury during service that he believes resulted in his current lower left extremity peripheral neuropathy.

The service treatment records show no evidence or treatment for lower left extremity peripheral neuropathy. During separation from his second period of service, the Veteran reported being in good health with a history of a finger operation, but no other issues. July 1986 Report of Medical History. His separation examination also noted no defects and a normal clinical evaluation. July 1986 Report of Medical Examination.

The Veteran's medical treatment provider C T, M.D., opined that the Veteran's foot pain is secondary to a foot operation and neuropathy from his hepatitis C. January 2006 Correspondence from Dr. C T. 

The December 2014 correspondence from Dr. M K also indicated that the Veteran's left foot peripheral neuropathy is due to his hepatitis C.

The Board finds that the preponderance of the lay and medical evidence is against finding that the Veteran's left lower extremity peripheral neuropathy was incurred in or otherwise due to service.

Accordingly, entitlement to service connection for left lower extremity peripheral neuropathy is not warranted. 

Increased Rating

3. Entitlement to a TDIU prior to December 5, 2012, on an extraschedular basis.

The Veteran asserts that he is unable to secure or follow a substantially gainful occupation due to his bladder cancer, posttraumatic stress disorder (PTSD), depression, bipolar disorder, and hepatitis C. April 2013 VA Form 21-8940.

VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that a Veteran is precluded, by reason of service connected disabilities, from obtaining and maintaining any form of gainful employment consistent with education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16. Benefits based on individual unemployability are granted only when it is established that the service-connected disabilities are so severe, standing alone, as to prevent the retaining of gainful employment.

An entitlement to a TDIU, including on an extraschedular basis, cannot be earlier than the effective date of service connection for the disability or disabilities the TDIU is based on. See Delrio v. Wilkie, 32 Vet. App. 232 (2019).

In this case, the Veteran was awarded entitlement to a TDIU, effective December 5, 2012, based on the symptoms from his service-connected PTSD with depression. See May 2020 Rating Decision. However, the Veteran's entitlement to service connection for PTSD with depression is currently effective from December 5, 2012. June 2014 Rating Decision. The Veteran is currently not entitled to service connection for any other disability. Entitlement to a TDIU, including on an extraschedular basis, must be denied as there is no service-connected disability which could be found to cause individual unemployability prior to December 5, 2012.

Accordingly, entitlement to a TDIU, to include on an extraschedular basis, prior to December 5, 2012, is not warranted.

 

 

R. FEINBERG

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board M. Lin

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.